STATE of Wisconsin, Plaintiff-Respondent,

v.

Andrew C. WACHSMUTH, Defendant-Appellant.

Court of Appeals

*No. 91-1178-CR. Submitted on briefs October 30, 1991.—Decided January 28, 1992.*

(Also reported in 480 N.W.2d 842.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss,* assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Andrew Wachsmuth appeals his conviction for first-degree sexual assault and the denial of his postconviction motions for relief. Wachsmuth raises a variety of alleged errors. One issue Wachsmuth raises is that the jury verdict was improperly influenced by extraneous prejudicial information. We conclude that extraneous prejudicial information was received by the jury and that there is a reasonable possibility that this information contributed to the conviction. Therefore, Wachsmuth is entitled to a new trial.

Although we order a new trial, we address the following alleged errors because of double jeopardy considerations, reasons of judicial economy and the efficient administration of justice. Wachsmuth alleges that the evidence was insufficient to establish guilt beyond a reasonable doubt because the only direct testimony con-

cerning the sexual assault was that of the five-year-old alleged victim whose testimony Wachsmuth asserts is incredible as a matter of law. Wachsmuth next argues that he was denied his right to confrontation because the child's testimony was presented at trial by videotape. Wachsmuth also contends that his conviction must be reversed because he was charged with a violation of sec. 948.02(1), Stats., which did not exist at the time the alleged incident occurred.

We conclude that the jury was entitled to believe the child's testimony and that his testimony was sufficient to establish guilt beyond a reasonable doubt. We also conclude that Wachsmuth was not deprived of his right to confrontation by the presentation of the child's testimony on videotape. Finally, we conclude that Wachsmuth failed to demonstrate any prejudice as a result of the technical charging error made by the state. Nevertheless, due to our disposition of the first issue, we reverse the conviction and remand for a new trial.

Wachsmuth was charged with the sexual assault of R.J.E., a child under the age of thirteen. The alleged incident occurred when Wachsmuth and his father, Donald Wachsmuth, were baby-sitting R.J.E., and his baby sister. R.J.E. was three years old at the time the alleged incident occurred. R.J.E. testified at trial, via his deposition videotape, that Wachsmuth kissed his private parts. When asked what he meant by private parts, R.J.E. pointed to his genital area and explained "you go potty with 'em."

Donald was tried and convicted earlier of sexual assault against R.J.E. in a different trial based on conduct arising from the incident alleged in this case. Prior to jury selection, Wachsmuth moved in limine to exclude the evidence of Donald's conviction. The trial court, finding that the information would be highly prejudicial

to Wachsmuth, granted the motion and the trial proceeded without reference to Donald's trial or conviction.

On the morning of the second day of trial, however, a local newspaper reported a story about the trial that included facts concerning Donald's trial and conviction and identified the offense as arising out of the same incident. Consequently, the trial court inquired of the jury whether anyone had read the article. It received an affirmative response from a male juror who was then voir dired separately in chambers. The juror acknowledged that the report probably affected his thinking; however, he ultimately asserted that he could weigh Wachsmuth's case on its own merits and remove from his consideration the information he had received in regard to Donald's conviction. The trial court permitted the juror to remain, but instructed him not to discuss the information with the rest of the panel.

During deliberations, the jury sent a question to the judge inquiring "Who is Don and was he there at [the] time of [the] alleged perpetration?" After the court declined to answer the jury's question, the jury proceeded with its deliberations. The jury returned a guilty verdict.

Wachsmuth's postconviction motions resulted in a hearing to determine the extent and effect of the knowledge that the jury had concerning Donald and his conviction. At least three jurors testified that during the course of deliberations, Donald's identity and his involvement in the offense was discussed. Each of the three indicated that a female juror, someone other than the juror who was voir dired separately, had identified Donald as Wachsmuth's father. Two indicated that the juror related the fact that Donald had been convicted of sexual assault arising from this incident. They also indicated that this information was disclosed after the judge

declined to answer the jury's question. The source of the juror's knowledge apparently was the newspaper article published during the course of the trial. The court denied Wachsmuth's postconviction motions.

First, we address Wachsmuth's contention that he is entitled to a new trial on the grounds that the jurors received prejudicial extraneous information during deliberations. Because of public policy considerations including the prevention of jury harassment, encouragement of free and open jury deliberation, promotion of finality of verdicts and reduction of the incentive for jury tampering, a litigant's right to impeach a jury verdict is extremely limited. *After Hour Welding v. Laneil Mgmt. Co.,* 108 Wis. 2d 734, 737–38 n.2, 324 N.W.2d 686, 689 n.2 (1982).

However, if a litigant can show that the proffered evidence is competent to impeach the jury verdict, that the evidence demonstrates a substantial ground sufficient to overturn the verdict and that the defendant was prejudiced, a jury verdict can be impeached. *Id.* at 738, 324 N.W.2d at 689. The state concedes that the evidence is competent. It also concedes that the evidence demonstrates a substantial ground sufficient to overturn the verdict. The argument in this case centers around whether Wachsmuth was prejudiced by the jury's receipt of this information.

In *State v. Poh,* 116 Wis. 2d 510, 343 N.W.2d 108 (1984), the Wisconsin Supreme Court characterized the test for this third element as whether there is a reasonable possibility that the extraneous prejudicial information might have contributed to the conviction. *Id.* at 514, 343 N.W.2d at 111. If the court finds a reasonable possi-

bility that the information contributed to the verdict, the conviction must be reversed.

The prejudice to a moving party is a question of law that we review de novo. *Id.* at 523, 343 N.W.2d at 116. Factors we are to consider in this determination include

> the nature of the extraneous information and the circumstances under which it was brought to the jury's attention; the nature of the state's case; the defense presented at trial; and the connection between the extraneous information and a material issue in the case.

*Id.* at 530, 343 N.W.2d at 119. Based on a consideration of these factors, we conclude that in this case there is a reasonable possibility that the information might have contributed to the conviction.

First, the extraneous information indicated that Wachsmuth's father was tried and convicted of sexual assault involving conduct arising out of the same incident. The nature of this information was such that it went directly to a material issue of fact in this case. The jury could reasonably believe after hearing such information that there was no issue as to whether a sexual assault took place on the day Wachsmuth was babysitting. The only determination left for the jury, if they relied on this information, was whether Wachsmuth committed the sexual assault.

Second, the information was presented to the jury under circumstances that indicate that the jury thought the information was significant. The jury questioned the court during deliberations about the identity and relationship of Donald to the case. After the judge refused to answer this question, a juror who had the information furnished it to the balance of the jury.

1021

Third, the nature of the state's case against Wachsmuth is primarily one statement by a five-year-old child, who had a vivid imagination. The defense consisted of a complete denial of any wrongdoing and an assertion that perhaps the child's sexual knowledge came from acts performed with an older child on a day other than the day on which Wachsmuth was baby-sitting.

Finally, there is a direct connection between the extraneous information and material issues in the case. A reasonable jury may have been led to believe that Donald's conviction conclusively resolved that the sexual assault occurred, leaving to this particular jury only the question whether Wachsmuth committed the offense. In addition, because the information regarding Donald's conviction corroborated R.J.E.'s testimony that he was sexually assaulted, it also enhanced the credibility of R.J.E.'s testimony that Wachsmuth committed the assault. This information, therefore, constituted improper corroboration of R.J.E.'s testimony that a sexual assault occurred and that Wachsmuth committed it. Because the state's case had little other corroboration of R.J.E.'s assertions, this information significantly bolstered the state's case.

Thus, we must conclude that there is a reasonable possibility that the extraneous information, improperly brought to the jury's attention, contributed to the conviction. Accordingly, we must remand this case for a new trial.

The next issue we address is whether R.J.E.'s testimony concerning the sexual assault is sufficient to support a determination of guilt beyond a reasonable doubt. A person challenging the verdict for sufficiency of the evidence bears a heavy burden. The test this court

1022

applies in such a challenge is whether a reasonable jury could be convinced of guilt beyond a reasonable doubt. *State v. Alles,* 106 Wis. 2d 368, 376–77, 316 N.W.2d 378, 382 (1982). This court must view the evidence in a light most favorable to the verdict and indulge every reasonable inference that may be drawn from the facts adduced at trial. *Id.* at 377, 316 N.W.2d at 382. Where more than one reasonable inference can be drawn from the facts, this court must adopt the inference that supports the finding made by the jury. *Id.*

The question of sufficiency of the evidence in this case centers around R.J.E.'s credibility. Wachsmuth argues that the jury was not entitled to believe R.J.E. because R.J.E.'s testimony is incredible as a matter of law.

Wachsmuth bases his argument on the fact that R.J.E.'s testimony included a significant amount of facts that were clearly the product of his imagination. During his deposition, R.J.E. related at length fanciful adventures that he had at Barker's Island on the date the alleged incident occurred. He stated that he drove boats and trucks and purchased food with enormous sums of money. R.J.E., at the end of his testimony, was asked whether everything he had said that day was the truth, and he responded yes.

■

It is generally not the province of the reviewing court to determine issues of credibility. *Associates Fin. Servs. Co. v. Hornik,* 114 Wis. 2d 163, 169, 336 N.W.2d 395, 398 (Ct. App. 1983). It is the jury's function to determine credibility, and, when it exercises this function, we will not disturb its determination on appeal unless we determine that the testimony was incredible as a matter of law. *Nabbefeld v. State,* 83 Wis. 2d 515, 529, 266 N.W.2d 292, 299 (1978).

R.J.E.'s testimony regarding the sexual assault was markedly different from his testimony concerning his adventures on Barker's Island. R.J.E. was excited and buoyant when describing his make-believe adventures. However, when asked questions concerning the assault, R.J.E. became reluctant to speak, looked at the floor and quietly related very brief answers. In addition, we note that R.J.E.'s testimony concerning the sexual assault contained no internal inconsistencies. Therefore, we cannot say that R.J.E.'s testimony concerning the sexual assault was patently incredible. A reasonable jury was entitled to accept the sexual assault testimony and disregard the obviously fanciful testimony related by R.J.E. *See id.*

We search for credible evidence to support the jury's verdict, and here there was credible testimony by the alleged victim that Wachsmuth kissed him in the genital area. This information is sufficient to establish Wachsmuth's guilt beyond a reasonable doubt.

Next, we address Wachsmuth's assertion that he was denied his right to confrontation by use of R.J.E.'s videotape deposition during trial. A trial court's decision to authorize a videotape deposition under sec. 967.04(7)(a), Stats., will only be reversed if we conclude that there was an abuse of discretion. *See State v. Thomas,* 144 Wis. 2d 876, 890, 425 N.W.2d 641, 646 (1988). There is no abuse of discretion as long as the trial court examines the relevant facts, applies the proper standard of law and, using a demonstrated rational process, reached a conclusion a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982).

██ The trial court in this case exercised its discretion and granted the state's motion. It gave the following reasons for its decision:

> [B]asically because of the age of the child, as well as the type of offense . . .. And the court has heard this child testify before, and I would—I think it would be extremely difficult and extremely stressful for this child to have to appear in a large courtroom in front of a great—a large number of people, including a jury . . . to testify.

The trial court also articulated that its decision was based on the fact that R.J.E. had already given testimony in numerous proceedings including the trial of Donald Wachsmuth. The trial court's determination that the harm R.J.E. would suffer by testifying in open court outweighed Wachsmuth's interest in having R.J.E. physically present in front of the jury, constituted a reasonable exercise of its discretion based on the appropriate legal standards.

Wachsmuth asserts, however, that *Coy v. Iowa,* 487 U.S. 1012, 1016 (1988), requires a contrary result. Wachsmuth asserts that R.J.E.'s presence at trial is required unless the court makes a specific finding that shows a high need to override the guarantee of a face-to-face encounter in open court.

*Coy* does not control our decision because it is significantly factually distinct from the facts presented here. In *Coy,* two young women testified at trial, unable to view the defendant by virtue of a strategically placed screen. In R.J.E.'s deposition, not only was Wachsmuth present, but the two confronted each other face-to-face.

The Wisconsin Supreme Court supplemented its decision in *Thomas* after the United States Supreme

Court decided *Coy*. *State v. Thomas,* 150 Wis. 2d 374, 442 N.W.2d 10 (1989). After discussing *Coy,* the court reiterated its position that a videotape deposition under sec. 967.04(7), Stats., is the functional equivalent of live testimony. *Thomas,* 150 Wis. 2d at 392, 442 N.W.2d at 19. The court stated that this procedure ensures the fundamental protections of the confrontation clause, including the right to cross-examination, the observation of the witness' demeanor, face-to-face confrontation and the requirement of testimony under oath. *Id.*

Here, Wachsmuth confronted his accuser face-to-face and was entitled to full and thorough cross-examination of R.J.E. In addition, the jury was able to fully observe the demeanor of the witness on videotape. R.J.E. was a young child who had already appeared numerous times in court to testify concerning the incident both in this case and the trial of Donald Wachsmuth, and the trial court, exercising its discretion, determined that there was a need to vary the procedure from the normal confrontation in open court. Based on these considerations, we conclude that Wachsmuth's right to confrontation was not abridged by use of the videotape testimony at trial.

Finally, we reject Wachsmuth's contention that his conviction must be reversed because the state charged him with a violation of sec. 948.02(1), Stats., a statute that did not exist at the time the alleged incident occurred. Section 948.02(1) is merely the successor statute to sec. 940.225(1), Stats., the controlling statute defining first-degree sexual assault at the time the incident occurred in this case. The judgment of conviction in this case correctly reflects that Wachsmuth was convicted of first-degree sexual assault in violation of sec. 940.225(1).

██

Both statutes contain identical elements. The case was tried on the proper elements, and the jury was properly instructed as to the elements of the offense. Hence, the technical charging error made by the state was clearly harmless to Wachsmuth. *See State v. Dorcey,* 98 Wis. 2d 718, 720, 298 N.W.2d 213, 215 (Ct. App. 1980); *see also* sec. 971.26, Stats.

We elect not to address the remaining errors submitted by Wachsmuth in light of the fact that a new trial must be ordered because of the prejudicial extraneous information that was introduced into the jurors' deliberations.

*By the Court.*—Judgment reversed and cause remanded with directions.