STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard DODSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–1306–CR. Oral argument February 20,
1998.—Decided June 19, 1998.*

(Also reported in 580 N.W.2d 181.)

For the defendant-appellant-petitioner there were briefs by *Michael J. Backes*, and *Law Offices of Michael J. Backes*, Milwaukee and oral argument by *Michael J. Backes*.

For the plaintiff-respondent the cause was argued by *Warren D. Weinstein*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Defendant Richard Dodson (Dodson) seeks review of a court of appeals' decision reversing one conviction and affirming two convictions for first-degree sexual assault of a child. The reversed count was based on sexual intercourse with a child; the two affirmed counts were based on sexual contact with a child. Dodson argues that evidence of a prior sexual assault of the victim, which the court of appeals held was erroneously excluded as to the reversed count, was likewise erroneously excluded on the other two affirmed counts. Thus, Dodson asserts, the two convictions affirmed by the court of appeals should be reversed. We agree. Because we conclude that the exclusion of this evidence violated Dodson's right to a fair trial and that the State of Wisconsin's (State's) interest in excluding the evidence under the rape shield law does not overcome his right, we reverse that part of the court of appeals' opinion which affirmed the two convictions and remand for a new trial. We further conclude that the modified jury instruction given to the jury was misleading.

¶ 2. The defendant, Richard Dodson, was charged with three counts of intentionally sexually assaulting a child who has not yet attained the age of 13 years, contrary to Wis. Stat. § 948.02(1) (reprinted below).[1] Counts one and two were based on allegations

---

[1] All references to Wisconsin Statutes are to the 1991–92 version unless otherwise noted.

Wis. Stat. § 948.02(1) provides: "FIRST DEGREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with

of sexual contact (defined below)[2] with the child, B.W.S. Count three was based on an allegation of sexual intercourse (defined below)[3] with the child, B.W.S. The jury convicted the defendant of all three counts. Dodson was also charged with one count of intentionally exposing a child to harmful materials, contrary to Wis. Stat. § 948.11(2)(a). The jury acquitted him of this charge. The Kenosha County Circuit Court, S. Michael Wilk, Judge, entered judgment on the three convictions for first-degree sexual assault.

¶ 3. Dodson appealed his convictions, arguing that the circuit court erred in excluding evidence, presented by an offer of proof, that the victim had been previously sexually assaulted by a third party, Bobby M. Defense counsel offered this evidence to provide an alternative source for the child's sexual knowledge and to rebut the State's evidence of physical injury to the child. In an unpublished decision, *State v. Dodson*, No. 96–1306–CR, unpublished slip op. (Wis. Ct. App. May 21, 1997), the court of appeals applied the test laid out by this court in *State v. Pulizzano*, 155 Wis. 2d 633,

---

a person who has not attained the age of 13 years is guilty of a Class B felony."

[2] Wis. Stat. § 948.01(5) defines "sexual contact" as

any intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant.

[3] Wis. Stat. § 948.01(6) defines "sexual intercourse" as

vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required.

647–48, 456 N.W.2d 325 (1990), to determine whether application of the rape shield law, Wis. Stat. § 972.11(2), violated the defendant's Sixth Amendment constitutional right to present a defense. The court of appeals reversed count three, first-degree sexual assault based on sexual intercourse, because the court determined that evidence of the prior sexual assault should have been admitted.

¶ 4. However, the court of appeals declined to reverse counts one and two, both for first-degree sexual assault based on sexual contact. The court determined that those convictions were based on "other discrete incidents" which do not closely resemble the proffered evidence of alleged sexual intercourse by Bobby M. *See Dodson*, No. 96–1306-CR, unpublished slip op. at 13. Therefore, the court remanded for a new trial only on count three.

¶ 5. Dodson also argues that the circuit court erred by submitting a modified version of Wis JI—Criminal 255 to the jury regarding the State's obligation to prove when the alleged events took place. The court of appeals determined that the circuit court did not err. The court reasoned that Dodson neither claimed an alibi for the time period alleged in the information nor did the instruction confuse the jury. This court accepted Dodson's petition for review of the court of appeals' decision on these two issues.

¶ 6. The first question presented in this case, whether the circuit court erred in excluding evidence of a prior sexual assault committed on the victim by a third party, is a question of constitutional proportion. Whether the circuit court's determination denied Dodson his Sixth Amendment right to present a defense is a question of constitutional fact which this court

reviews de novo. *See In Interest of Michael R.B.*, 175 Wis. 2d 713, 720, 499 N.W.2d 641 (1993) (citing *Pulizzano*, 155 Wis. 2d at 648).

 ¶ 7. Wisconsin's rape shield law, Wis. Stat. § 972.11(2) (reprinted below),[4] generally prohibits the introduction of evidence regarding the complainant's prior sexual conduct. *See* § 972.11(2)(b). "[G]enerally evidence of a complainant's prior sexual conduct is irrelevant or, if relevant, substantially outweighed by its prejudicial effect." *Pulizzano*, 155 Wis. 2d at 644. The statute does, however, provide three exceptions which represent "those limited circumstances in which evidence of a complainant's prior sexual conduct is generally viewed as probative of a material issue without

---

[4] Wis. Stat. § 972.11(2) provides in pertinent part:

(a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

(b) If the defendant is accused of a crime under s. 940.225, 948.02, 948.05 or 948.06, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31 (11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

being overly prejudicial." *Id.* The exceptions include evidence of the victim's past sexual conduct with the defendant; evidence of specific instances of sexual contact showing an alternative source of semen, pregnancy or disease; or evidence that the victim made prior untruthful allegations of sexual assault. *See* § 972.11(2)(b)1, 2, 3. In the present case, we agree with the court of appeals that evidence regarding prior sexual assault perpetrated on the child by a third party does not fall within one of these statutory exceptions.

¶ 8. This does not, however, end our inquiry. In *Pulizzano*, this court determined that Wis. Stat. § 972.11(2) is constitutional on its face, but as applied it may unconstitutionally deprive a defendant of his or her rights to a fair trial, confrontation, and compulsory process. *See Pulizzano*, 155 Wis. 2d at 647. "[I]n the circumstances of a particular case evidence of a complainant's prior sexual conduct may be so relevant and probative that the defendant's right to present it is constitutionally protected." *Id.*

¶ 9. The concern pervasive throughout the *Pulizzano* analysis is the defendant's right to a fair trial, guaranteed by Article I, § 7 of the Wisconsin Constitution[5] and the Sixth Amendment to the U.S. Constitution.[6]

---

[5] Wis. Const. Art. I, § 7 provides in part: "**Rights of accused.** In all criminal prosecutions the accused shall enjoy the right. . .to meet the witnesses face to face; [and] to have compulsory process to compel the attendance of witnesses in his behalf. . . ."

[6] U.S. Const. amend. VI provides in part: "In all criminal prosecutions, the accused shall enjoy the right. . .to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor. . . ."

The rights guaranteed by the confrontation and compulsory process clauses are fundamental and essential to achieving the constitutional objective of a fair trial. The two rights have been appropriately described as opposite sides of the same coin and together, they grant defendants a constitutional right to present evidence. The former grants defendants the right to 'effective' cross-examination of witnesses whose testimony is adverse, while the latter grants defendants the right to admit favorable testimony. The right to present evidence is not absolute, however. Confrontation and compulsory process only grant defendants the constitutional right to present relevant evidence not substantially outweighed by its prejudicial effect.

*Pulizzano*, 155 Wis. 2d at 645–46 (internal citations omitted).

¶ 10. To determine whether Wis. Stat. § 972.11(2), as applied, deprives a defendant of his or her constitutional rights and therefore, to admit evidence normally barred by the rape shield statute, the *Pulizzano* court established a two-part process. First, the defendant must establish his or her constitutional rights to present the proposed evidence through a sufficient offer of proof. *See id.* at 648–49. A sufficient offer of proof must meet five tests: "(1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect." *Id.* at 656.

¶ 11. Second, if the defendant meets the five-part showing in his or her offer of proof to establish a constitutional right to present evidence, the court must

determine whether the defendant's rights to present the proffered evidence are nonetheless outweighed by the State's compelling interest to exclude the evidence. *See id.* at 653. The court must closely examine and weigh the State's interests against the defendant's constitutional rights to present the evidence, as measured by the five factors listed above. *See id.* at 654–55.

¶ 12. The *Pulizzano* court concluded that, based on the above analysis, Wis. Stat. § 972.11 was unconstitutional as applied in Pulizzano's case. However, "[w]hether the statute is unconstitutional as applied in other instances is to be resolved on a case-by-case basis." *Id.* at 655.

¶ 13. Before turning to the five-part *Pulizzano* test, we must discuss the offer of proof itself. "The offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt." *Milenkovic v. State*, 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978).

■

¶ 14. Two purposes are served by an offer of proof: first, provide the circuit court a more adequate basis for an evidentiary ruling and second, establish a meaningful record for appellate review. *See State ex rel. Schlehlein v. Duris*, 54 Wis. 2d 34, 39, 194 N.W.2d 613 (1972). An offer of proof may be made in question and answer form or by statement of counsel, but out of the presence of the jury. *See id. See also* Wis. Stat. § 901.03(1)(b) (reprinted below).[7] Although the form of

---

[7] Wis. Stat. § 901.03(1)(b) provides:

(1) EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

the offer of proof is at the circuit court's discretion, this court has specifically urged judges to use the question and answer form whenever practicable. *See Milenkovic*, 86 Wis. 2d at 285 n.10.

> We conclude that offers of proof made in this manner will significantly reduce the possibility that trial counsel will inadvertently fail to offer to prove a crucial fact upon which the conclusion or inference which he seeks to establish necessarily depends. We also believe such a procedure will assist the trial court and any reviewing court in determining whether the evidentiary hypothesis can actually be sustained or the offer is overstated. Although the question and answer method of making an offer of proof may take a little more time, it enable (sic) the trial court and reviewing court to approach the evidentiary problem with some confidence that the evidentiary problem really exists.

*Id. See also Michael R.B.*, 175 Wis. 2d at 724–25 n.5.

¶ 15. The court in *Milenkovich* did not say, and we do not say now, that every offer of proof should be accompanied by a question and answer format. There are cases in which the evidentiary problem posed is easily resolved by statements of counsel. Other considerations, such as concerns of or for the alleged victim, may well encourage the court to resolve the matter without the question and answer format. Nevertheless, in a close case we encourage the circuit courts to engage in the question and answer format.

¶ 16. In the present case, at the close of the first day of trial and out of the presence of the jury, defense

---

. . .

(b) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

counsel indicated that he hoped to ask the victim, B.W.S., by way of an offer of proof, whether he ever told the defendant's mother, Delores, that he had been sexually assaulted by a different person. Defense counsel also planned to call Delores to testify regarding her conversation with B.W.S. in 1990 in which B.W.S. allegedly told her that Bobby M. had sexually assaulted him in June or July, 1990. Defense counsel asserted that such information was probative to the defense theory that the third party, Bobby M., actually committed the assault on the child. The evidence, he argued, would provide an alternative source for the child's sexual knowledge and would rebut the State's evidence of the child's physical injury. The court denied defense counsel's motion, stating that the rape shield statute bars any inquiry of the victim concerning any prior sexual activity. Accordingly, the circuit court would not allow defense counsel to question B.W.S. regarding his statements to the defendant's mother; nor would the court allow the defendant's mother to testify regarding B.W.S.'s statements.

¶ 17. Following the court's determination, defense counsel completed his offer of proof by stating what the defendant's mother would testify to if allowed to do so. Defense counsel stated that the defendant's mother would testify that B.W.S. told her that around June or July, 1990, Bobby M. "told him to take off his clothes, and that [Bobby M.] laid on top of him, and that his weiner got real big, and that he put his weiner in his butt. [B.W.S.] said he told [Bobby M.] to stop it, it was hurting him, and [Bobby M.] said it doesn't hurt, and if (sic) feels good, and he likes it." Defense counsel asserted that the information was important because "the scenario is identical to that which [the victim] described and attributes to this defendant." He also

asserted that the terminology, "it feels good," was also used by the victim in this case.

¶ 18. Later in the trial and out of the presence of the jury, defense counsel proposed asking Bobby M., who had been called as one of the State's witnesses, whether he had ever sexually assaulted B.W.S. The circuit court denied defense counsel's request, concluding that the rape shield statute bars any line of questioning regarding the victim's prior sexual conduct. Defense counsel then made an offer of proof regarding what questions he had hoped to ask Bobby M. "The offer of proof would be that I intend on asking [Bobby M.] whether or not he had any sexual contact with [B.W.S.] at any time during his life. Specifically, did you ever have any rectal intercourse with [B.W.S.]."

¶ 19. Again, the two purposes of an offer of proof are to provide the circuit court a more adequate basis for an evidentiary ruling and to establish a meaningful record for appellate review. The circuit court has discretion to obtain an offer of proof either by a statement from counsel or by question and answer. However, as we encouraged in *Milenkovic*, question and answer offers of proof will assist counsel in proving all crucial facts necessary to the case and will assist circuit and appellate courts to determine whether there is a sustainable evidentiary hypothesis. We believe that in a close case, the circuit court should favor the question and answer form to achieve the purposes of an offer of proof.

¶ 20. In this case, we conclude that the circuit court did not have an adequate basis to make an evidentiary ruling on the offers of proof received through statements from defense counsel. Defense counsel was only able to relay in his statement what Delores probably told him about her conversation with B.W.S. Had

defense counsel been able to question Delores, he may have elicited further information about the assault. Defense counsel was also not allowed to make a question and answer offer of proof with either B.W.S. or Bobby M. Had he been allowed to question them, defense counsel may have established "an evidentiary hypothesis underpinned by a sufficient state of facts to warrant the conclusion or inference" that B.W.S.'s sexual knowledge and physical injury were the result of an assault by Bobby M. rather than by the defendant. The circuit court, the court of appeals, and this court would have been better served had the circuit court allowed defense counsel to question B.W.S., Bobby M. and the defendant's mother. Such offers of proof should, however, be conducted outside the presence of the jury. *See, e.g., State v. Padilla,* 110 Wis. 2d 414, 430–31, 329 N.W.2d 263 (Ct. App. 1982).

¶ 21. We now turn to the five-part *Pulizzano* test, applying the test to the facts in the record to determine whether the proffered evidence of alleged prior sexual intercourse committed on the victim should have been admitted in regard to all the charges against this defendant including those based on sexual contact. In cases involving more than one count of sexual assault, the circuit court should analyze each count under the *Pulizzano* test. The State asserts that the defendant's offers of proof did not meet the second, third, fourth or fifth *Pulizzano* tests. We will address the State's arguments within our analysis of each test.

¶ 22. The first test is whether the proffered evidence shows that the prior acts clearly occurred. The defendant offered that the defendant's mother would testify that the victim told her about a prior sexual assault by a third party. The State does not challenge this and accordingly, this first test is met.

¶ 23. The second *Pulizzano* test is that the prior act closely resembles those of the present case. The court of appeals, in upholding the two convictions based on sexual contact, determined that those convictions were based on "other discrete incidents." The court of appeals relied on the statement this court made in *Michael R.B.*, 175 Wis. 2d at 736, that sexual touching does not "so closely resemble[ ] sexual intercourse as to satisfy the *Pulizzano* test."

¶ 24. In *Michael R.B.*, the defendant was charged with first-degree sexual assault based on sexual intercourse. *See id.* at 721. To refute the State's evidence, the defendant sought to introduce testimony from a neighbor who allegedly saw the victim and victim's brother "playing together in a tire swing in the early summer of 1990; the children were facing each other in the swing, [the brother's] pants were undone, and the children spent two or three minutes 'touching each other's private parts.' " *Id.* at 726. This court stated: "[W]e find it an insupportable leap of reasoning to conclude that two or three minutes of undefined sexual touching while sitting in a tire swing so closely resembles sexual intercourse as to satisfy the *Pulizzano* test." *Id.* at 736.

¶ 25. In the present case, the defendant, charged with first-degree sexual assault, sought to admit evidence of prior sexual intercourse to suggest an alternative source for the State's evidence of physical injury to the child and to provide an alternative source of sexual knowledge. The State argues that Dodson failed to link the evidence of the prior sexual intercourse with the sexual contact charges. The State asserts that prior sexual intercourse does not sufficiently resemble sexual contact to be admissible under *Pulizzano*. We disagree.

¶ 26. Although evidence of prior sexual touching does not sufficiently "resemble sexual intercourse," it does not automatically follow that evidence of prior sexual intercourse does not resemble or involve sexual touching. In fact, it is impossible to conceive of sexual intercourse which does not involve "intentional touching. . .directly. . .by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant." Wis. Stat. § 948.01(5) (defining sexual contact). "Intimate parts" is defined as "breast, buttock, anus, groin, scrotum, penis, vagina, or pubic mound of a human being." Wis. Stat. § 939.22(19). Although sexual touching does not closely resemble or involve sexual intercourse (as in *Michael R.B.*), sexual intercourse most certainly involves sexual contact.

¶ 27. The third test of *Pulizzano* is that the prior act is clearly relevant to a material issue. "Evidence of the prior sexual assault is probative of a material issue, to show an alternative source for sexual knowledge. . . ." *Pulizzano*, 155 Wis. 2d at 652. A defendant's constitutional rights to confrontation and compulsory process only allow a defendant to present relevant evidence not substantially outweighed by its prejudicial effect. The test for relevancy is whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01.

¶ 28. In this case, evidence of a prior sexual assault is relevant to show an alternative source not only for the child's physical injury, but also for the child's sexual knowledge. The State argues that alleged

79

prior sexual intercourse is dissimilar and therefore, irrelevant to a current charge of sexual contact. As stated above, this is an incorrect hypothesis. Accordingly, the third *Pulizzano* test is met.

¶ 29. The fourth *Pulizzano* test is that the evidence is necessary to the defendant's case. "Evidence of the prior sexual assault is. . .necessary to rebut the logical and weighty inference that [the victim] could not have gained the sexual knowledge he possessed unless the sexual assaults [the defendant] is alleged to have committed occurred." *Pulizzano*, 155 Wis. 2d at 652.

¶ 30. As in *Pulizzano*, the evidence of prior sexual assaults is necessary to the defendant's case to rebut the logical and weighty inference that the victim gained sexual knowledge because the defendant committed the acts charged. In most sexual assault cases, the only witnesses to the crime are the victim and the perpetrator. The jury's verdict is often a matter of which person the jury finds to be more credible. *See, e.g., State v. Johnson*, 149 Wis. 2d 418, 427, 439 N.W.2d 122 (1989). One indication of credibility is whether there is corroborating evidence to support the complainant's testimony. *See, e.g., State v. Wachsmuth*, 166 Wis. 2d 1014, 1022, 480 N.W.2d 842 (Ct. App. 1992). In *Wachsmuth*, the defendant was charged with sexually assaulting a child. The defendant's father had previously been convicted of sexual assault for assaulting the same child on the same occasion for which the defendant was charged. During the trial against the defendant, some of the jurors read a newspaper article about the father's conviction. The court of appeals reversed Wachsmuth's conviction and remanded for a new trial because the extraneous information, improp-

> [B]ecause the information regarding [the father's]
> conviction corroborated [the victim's] testimony
> that he was sexually assaulted, it also enhanced the
> credibility of [the victim's] testimony that Wach-
> smuth committed the assault. This information,
> therefore, constituted improper corroboration of
> [the victim's] testimony that a sexual assault
> occurred and that Wachsmuth committed it.
> Because the state's case had little other corrobora-
> tion of [the victim's] assertions, this information
> significantly bolstered the state's case.

*Id.* at 1022.

¶ 31. In this case, the jury heard evidence that
the defendant sexually touched and had intercourse
with B.W.S. The State relied on the child's sexual
knowledge and evidence of the child's physical injury to
corroborate the victim's allegation that he was sexually
assaulted. In other words, the corroborating evidence
of physical injury bolstered the victim's credibility,
especially as to the sexual intercourse charge. The
court of appeals correctly reversed the conviction for
sexual assault based on sexual intercourse because the
jury heard the victim's testimony and corroborating
evidence that the sexual intercourse occurred, but did
not hear the impeaching evidence.

¶ 32. However, it is difficult to conclude that the
evidence of sexual intercourse, corroborated by the
physical injury, did not also bolster B.W.S.'s credibility
in the eyes of the jury with regard to the two sexual
contact charges. The State asserts that without the
underlying assumption that the jury would believe
that a nine-year old child could not describe the sexual
contact unless it occurred, evidence of the prior sexual

assault is not necessary to the defendant's case. However, the jury could have and probably did use the victim's version of the assaults, vis-a-vis the sexual intercourse charge and corroborating evidence, to convict on the sexual contact charges as well. Had the jury learned of the defendant's evidence regarding prior sexual assaults committed on B.W.S. by a third party, it may have questioned the victim's credibility in the entire matter. Accordingly, we conclude as to the fourth prong of the *Pulizzano* test, that the rebutting evidence is necessary to the defendant's case because it may have created enough of a reasonable doubt that the jury would have acquitted not only on first-degree sexual assault based on sexual intercourse but also on the remaining charges based on sexual contact.

¶ 33. The fifth test in *Pulizzano* is that the probative value of the evidence outweighs its prejudicial effect. *See Pulizzano*, 155 Wis. 2d at 656. The potential for prejudice can be negated by giving a limiting instruction to the jury. *See id.* at 652–53. In this case, evidence of prior sexual assaults on the child is highly probative, even to the charges of sexual assault based on sexual contact because it suggests an alternative source of the child complainant's sexual knowledge. The State asserts that whether the prior assault occurred, it sheds little if any light on the sexual contact charges against Dodson. We disagree. As discussed above, although prior sexual contact may not infer sexual intercourse, it does not automatically follow that evidence of prior sexual intercourse cannot infer prior sexual touching. In this case, evidence of prior sexual intercourse is probative, not only to show an alternative source of sexual knowledge but also with respect to the victim's credibility.

¶ 34. The State asserts that evidence of prior sexual conduct between B.W.S. and Bobby M. is prejudicial because it would divert the jury's attention to that interaction rather than determining the credibility of Dodson and B.W.S. Although that may occur to some degree, this risk does not outweigh the probative value that the evidence has regarding the credibility of Dodson and B.W.S.—the very thing about which the State is concerned. As in *Pulizzano*, "we cannot conclude in this case that the possible prejudice the evidence presents outweighs its probative value. . . ." *Id.* at 653.

¶ 35. Having concluded that the defendant has met the five-part test to establish his constitutional right to present evidence of the prior sexual assaults committed on the victim, we must now determine if the State's interests in prohibiting the evidence nevertheless require that the evidence be excluded. *See Pulizzano*, 155 Wis. 2d at 653. According to *Pulizzano*, we must apply a strict scrutiny analysis—"there must be compelling state interests to overcome the defendant's constitutional rights." *Id.* at 654. In *Pulizzano*, the court concluded:

> As meritorious as the state's interests underlying sec. 972.11, Stats., are, and to the extent that they promote effective law enforcement. . .we cannot conclude that they overcome Ms. Pulizzano's constitutional right to present evidence of the prior sexual assault. The inference that [the victim] could not possess the sexual knowledge he does unless Ms. Pulizzano sexually assaulted the children greatly bolsters [the victim's] allegations. In order to rebut that inference, Ms. Pulizzano must establish an alternative source for [the victim's] sexual

knowledge. Evidence of the prior sexual assault is therefore a necessary and critical element of Ms. Pulizzano's defense. Given the circumstances of this case, we find Ms. Pulizzano's right to present the evidence paramount.

*Pulizzano*, 155 Wis. 2d at 655. As discussed above, had the defense counsel been allowed to present an offer of proof in the form of questions and answers, it is likely that he would have elicited testimony regarding prior sexual touching as well as sexual intercourse. As in *Pulizzano*, and for the same reasons here, we conclude that the State's interest in excluding evidence under the rape shield law does not overcome the defendant's constitutional rights to present a defense.

■

¶ 36. In sum, we conclude that the exclusion of this evidence violated Dodson's right to a fair trial and that the State's interest in excluding the evidence under the rape shield law does not overcome his right. We hold that in this case the exclusion of evidence of prior sexual assaults on the victim based on sexual intercourse by a third party which warrants reversal of the first-degree sexual assault charge based on sexual intercourse also warrants reversal of the two sexual assault charges based on sexual contact.

¶ 37. We now turn to the second issue presented by this case: whether Wis JI—Criminal 255 or some version of the instruction should have been given to the jury at all and if so, whether the modified version given to the jury was appropriate. In this case the circuit court submitted a modified version of Wis JI—Criminal 255 ("State Need Not Prove Exact Time of Commission") to the jury. (Wis JI—Criminal 255 and

the instruction as modified by the circuit court are reprinted below.)[8]

¶ 38. Dodson argues that Wis JI—Criminal 255 should not have been given to the jury at all because he was charged with three offenses that allegedly occurred within a range of time (between February 29, 1992 and August 31, 1992) rather than on precise dates. He argues that the circuit court erred in giving the instruction because it is designed for situations where only one offense is charged or, if there are multiple charges, there is no confusion regarding their separateness in time. *See Jensen v. State*, 36 Wis. 2d 598, 153 N.W.2d 566 (1967). Dodson further argues that even if it was not error to submit some version of Wis JI—Criminal 255 to the jury, the instruction in this case was erroneous because it was internally inconsistent, falsely stated the law and misled the jury. We address each argument in turn.

---

[8] The actual text of Wis JI—Criminal 255 provides:

> If you find that the offense charged was committed by the defendant, it is not necessary that the State shall have proved that the offense was committed on the precise date alleged in the (information) (complaint). If the evidence shows beyond a reasonable doubt that the offense was committed on a date near the date alleged, that is sufficient.

The text of the modified version of Wis JI—Criminal 255 given to the jury in this case is as follows (underlined portions are modified):

> If you find that the offense charged was committed by the defendant, it is not necessary that the State shall have proved that the offenses were committed between the precise dates alleged in the Information. If the evidence shows beyond a reasonable doubt that the offenses were committed on a date during the time period alleged in the Information, that is sufficient.

¶ 39. A circuit court has wide discretion to give jury instructions based on the facts of a case. *See State v. McCoy*, 143 Wis. 2d 274, 289, 421 N.W.2d 107 (1988). The court may exercise this discretion regarding both the language and emphasis of the instruction. *See id.* (citing *State v. Vick*, 104 Wis. 2d 678, 690, 321 N.W.2d 489 (1981)). "The court's discretion should be exercised to 'fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence.' " *McCoy*, 143 Wis. 2d at 289 (quoting *State v. Dix*, 86 Wis. 2d 474, 486, 273 N.W.2d 250 (1979)). A jury instruction is tainted and in error if "a reasonable juror could misinterpret the instructions to the detriment of a defendant's due process rights." *McCoy*, 143 Wis. 2d at 289 (citing *State v. Schulz*, 102 Wis. 2d 423, 426–27, 307 N.W.2d 151 (1981)).

¶ 40. Wisconsin JI—Criminal 255 provides that the State need not prove that the defendant committed the charged offense on the precise date alleged if the evidence shows that the offense was committed on a date near the date alleged. The *Jensen* court determined that giving Wis JI—Criminal 255 was error because the defendant offered an alibi defense. Where "there were two [or more] offenses in question which occurred very close to each other in time and [there is]. . .general testimony to the effect that these acts. . .occurred several times, . . ." the practical effect of giving Wis JI—Criminal 255 is to render the alibi defense ineffectual from the beginning. *See Jensen*, 36 Wis. 2d at 604. However, the error in the instruction only affects the charges for which the defendant presents an alibi defense. *See id.* at 606.

¶ 41. At oral argument in the present case, counsel for Dodson admitted that Dodson had no real alibi defense at trial. Although he attempted to narrow the window of opportunity to commit the alleged acts, he did not notify the State of an alibi defense, pursuant to Wis. Stat. § 971.23(8); nor did he offer an actual alibi defense at trial. Therefore, we conclude that it would not be error to submit Wis JI—Criminal 255 to the jury because Dodson did not offer an alibi defense and there was no confusion about the separateness of the charges, each involving different conduct, occurring within the time frame alleged.[9]

¶ 42. The next question is whether the circuit court erred in this case by submitting Wis JI—Criminal 255 to the jury as modified. The validity of the jury's verdict depends on the correctness of the jury instructions which the jury is charged to follow. *See Schulz*, 102 Wis. 2d at 426–27.

> Misleading instructions and verdict questions which may cause jury confusion are a sufficient basis for a new trial. . . .
> Where jury instructions appear on their face inconsistent and confusing, we are required to examine the context in which the jury received the contradicting instructions to determine whether the verdict itself inspires no confidence.

*Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 603, 541 N.W.2d 173 (Ct. App. 1995) (internal citation omitted).

---

[9] Although we determine it would not be error to submit Wis JI—Criminal 255 to the jury, we note that at the new trial in this case delivery of jury instructions remains a matter committed to the circuit court's discretion. *See State v. McCoy*, 143 Wis. 2d 274, 289, 421 N.W.2d 107 (1988).

¶ 43. The text of the modified version of Wis JI—Criminal 255 given to the jury in this case is as follows:

> If you find that the offense charged was committed by the defendant, it is not necessary that the State shall have proved that the offenses were committed between the precise dates alleged in the Information. If the evidence shows beyond a reasonable doubt that the offenses were committed on a date during the time period alleged in the Information, that is sufficient.

On its face, this instruction is internally inconsistent and contradictory.

██

¶ 44. The State argues that Wis JI—Criminal 255 as modified was not in error because it did not affect any of the material rights of the defendant. We disagree. "[O]nce the jury has been properly instructed on the principles it must apply to find the defendant guilty beyond a reasonable doubt, a court must assume on appeal that the jury has abided by those instructions." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). It is impossible for the jury to abide by the modified version of Wis JI—Criminal 255 as given in this case. The internal inconsistency of the instruction undermines any confidence in the jury's verdict. Therefore, we conclude that giving the jury instruction as modified so misled and confused the jury as to taint its verdict. We understand how in the heat of trial no one, the State, the defendant, nor the court, could see the internal inconsistency in the instruction given. But, we trust, it is now apparent to all that the modified instruction, given its internal inconsistency, was erroneous.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part and the cause is remanded to the circuit court for a new trial.

¶ 45. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I agree with the court's mandate. The instruction given constitutes prejudicial error.

¶ 46. I agree with the State and the court of appeals that the evidence of the sexual assault of the child victim that the defendant sought to introduce is not relevant to the sexual contact counts.

¶ 47. As *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), makes clear, the precise evidence offered and the theory for which it is offered must be carefully articulated and examined. Unless the circuit court closely scrutinizes and analyzes the evidence and its relevance to a material issue, the court will wind up annulling the rape shield statute.

¶ 48. I agree with the State's position, which it sets forth as follows:

> At trial, the defendant did not offer the evidence to show an alternative source of sexual knowledge. It is clear from his trial counsel's statements that defendant sought to suggest that Bobby Moore, not the defendant, assaulted the victim. He characterized the evidence as 'probative of who actually committed these offenses against this young man, if anybody did'. . . . His belated claim that he offered the evidence to show sexual knowledge is not supported by the record. . . .
>
> Nothing in the victim's testimony in describing the fondling in this case indicates any need to prove an alternative source of sexual knowledge. The

description did not contain any detailed anatomy that a nine-year-old would not be expected to know. None of the testimony describes activities which a nine-year-old would know only if the defendant committed these acts.

Without the underlying assumption that the jury would believe a nine-year-old could not describe fondling unless it had occurred, the evidence of the prior sexual assault is not necessary to the defendant's case.

Brief for State at 11–13.

¶ 49. For the foregoing reasons, I concur in the mandate and write separately.

¶ 50. ANN WALSH BRADLEY (*concurring*). While I agree with the mandate of the court, I write separately because I do not believe that the court should reach the constitutional question presented by *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990). As indicated by the majority opinion, the circuit court erroneously exercised its discretion in presenting the modified form of the Wis JI—Criminal 255 instruction to the jury. On that basis alone the defendant's convictions must be reversed and remanded for new trial.

¶ 51. The court of appeals reversed the defendant's conviction for sexual intercourse with a minor and allowed the defendant to offer evidence of the victim's prior sexual assault and resulting alternate source of sexual knowledge. It took this action to ensure the defendant a fair trial. This court affirms that portion of the court of appeals decision. Pursuant to the court of appeals determination, upon remand the

defendant will be allowed to offer evidence that Bobby M. previously sexually assaulted B.W.S.

¶ 52. However, the majority also reverses the defendant's convictions for sexual contact with a minor. The court takes this action on two grounds: (1) violation of the defendant's constitutional right to present the evidence of the victim's prior sexual assault for purposes of the sexual contact charges, and (2) the circuit court's erroneous offer of a modified jury instruction which "so misled and confused the jury as to taint its verdict." Majority op. at 88. Absent more, either error would require reversal of the defendant's convictions and remand for a new trial. The defendant seeks reversal of his remaining two convictions on either or both of these grounds.

¶ 53. This court has repeatedly recognized that it will not decide constitutional questions if a case can be resolved on other grounds. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997); *Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis. 2d 593, 612, 407 N.W.2d 873 (1987); *Bachowski v. Salamone*, 139 Wis. 2d 397, 415, 407 N.W.2d 533 (1987) (Abrahamson, J., concurring); *Labor and Farm Party v. Elections Board*, 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984); *Kollasch v. Adamany*, 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981); *see also Smith v. Journal Co.*, 271 Wis. 384, 390, 73 N.W.2d 429 (1955). Because the majority's resolution of the jury instruction issue requires reversal of the defendant's convictions for sexual contact with a minor, it should not reach the constitutional issue.

¶ 54. Additionally, the majority's reach to address the constitutional issue is unnecessary because the evidence deemed admissible as a result of its constitutional analysis has already been held admissible by the court of appeals decision. In revers-

ing the sexual intercourse count, the court of appeals determined, pursuant to *Pulizzano*, that evidence of B.W.S.'s prior sexual assault by Bobby M. should be admitted upon retrial. The majority's conclusion merely duplicates upon retrial the admission of that same evidence—that B.W.S. was previously sexually assaulted by Bobby M. Thus, the majority need not and should not reach the constitutional *Pulizzano* issue presented by the sexual contact charges. Accordingly, while I concur in the mandate, I join only in the majority's jury instruction discussion.

¶ 55. N. PATRICK CROOKS, J. (*concurring*). I join the mandate in this case, since I agree with the majority that the exclusion of the evidence of a prior sexual assault of the victim violated Dodson's right to a fair trial. Accordingly, I agree that Dodson's convictions for first-degree sexual assault based on sexual intercourse and sexual contact with a child should be reversed and the cause remanded to the circuit court for a new trial. I concur because I do not agree that the modified version of Wis JI—Criminal 255 "so misled and confused the jury as to taint its verdict." Majority op. at 88. Rather, I conclude that any error committed by the circuit court judge in giving the modified jury instruction was harmless.

¶ 56. Dodson challenges the jury instruction on two grounds: (1) that Wis JI—Criminal 255 should not have been given under the facts presented in this case; and (2) that the modified version of Wis JI—Criminal 255 falsely stated the law, was internally inconsistent, and misled the jury. Where a defendant challenges a jury instruction, claiming that it constitutes an erroneous statement of the law, an appellate court must apply

a "harmless error analysis to determine whether reversal is required." *State v. Lohmeier*, 205 Wis. 2d 183, 192, 556 N.W.2d 90 (1996)(citing *State v. Zelenka*, 130 Wis. 2d 34, 387 N.W.2d 55 (1986); *State v. Dyess*, 124 Wis. 2d 525, 370 N.W.2d 222 (1985); *State v. Paulson*, 106 Wis. 2d 96, 315 N.W.2d 350 (1982)).

¶ 57. In *Dyess*, 124 Wis. 2d at 540, this court concluded that when a jury instruction is given in error, a reviewing court must "consider whether the error was harmless." The harmless error test as defined by this court in *Dyess* is "whether there is a reasonable possibility that the error contributed to the conviction." *Id.* at 543.[1] If the record does not support a reasonable

---

[1] In *State v. Dyess*, 124 Wis. 2d 525, 544, 370 N.W.2d 222 (1985), this court relied upon the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), to set forth the harmless error test. In *Strickland*, the U.S. Supreme Court concluded that a conviction must be reversed if:

> "...there is a reasonable probability that, but for...[the] errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> "...[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.... Taking the [findings unaffected by error] as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if...the decision reached would reasonably likely have been different absent the errors."

*Dyess*, 124 Wis. 2d at 544 (citing *Strickland*, 466 U.S. at 695–96).

The U.S. Supreme Court used the term "reasonable *probability*" in *Strickland*; however, this court in *Dyess* stated that the "reasonable *possibility*" test for harmless error under Wisconsin law "is substantively the same." *Dyess*, 124 Wis. 2d at 544. Although

possibility that the error contributed to the defendant's conviction, the error is harmless, and the judgment of conviction should be affirmed. *Id.*

¶ 58. Where a judgment of conviction is challenged based upon an allegedly erroneous jury instruction, the jury instruction and its effect on the jury should not be viewed in isolation, but within the context of the trial as a whole:

> [A] judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

*Zelenka*, 130 Wis. 2d at 49 (citations omitted).

¶ 59. The Information in this case stated that each of the charged offenses allegedly occurred at some

---

this court concluded in *Dyess* that the appropriate standard for a harmless error analysis is one of "reasonable possibility," several Wisconsin courts have applied the harmless error test using a "reasonable probability" standard. *See, e.g., State v. A.H.*, 211 Wis. 2d 561, 569, 566 N.W.2d 858 (Ct. App. 1997); *State v. Joseph P.*, 200 Wis. 2d 227, 237, 546 N.W.2d 494 (Ct. App. 1996).

In reviewing erroneous jury instructions in the civil context, this court has stated that "a new trial is not warranted unless the error is *prejudicial.*" *Nowatske v. Osterloh*, 198 Wis. 2d 419, 429, 543 N.W.2d 265 (1996) (emphasis supplied). I note that the majority relies upon a civil case for its review of the allegedly erroneous jury instruction in this criminal case. *See* Majority op. at 87 (quoting *Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 603, 541 N.W.2d 173 (Ct. App. 1995)).

time between February 29, 1992, and August 31, 1992. The modifications to the standard jury instruction, Wis JI—Criminal 255, and the record from the instructions conference suggest that the circuit court was attempting to tailor the instruction to fit the evidence presented by the State: that there were four separate charged offenses, each of which allegedly occurred between February 29, 1992, and August 31, 1992.

¶ 60. At the instructions conference, Dodson objected to the giving of Wis JI—Criminal 255, citing his previous motion to make the time of the alleged acts in the Information more certain. *See* Record on appeal 23:99. However, he did not object to the jury instruction, as modified, because it would potentially confuse the jury regarding the specific dates upon which the alleged acts occurred, or because of the apparent inconsistency in the instruction. Further, Dodson's counsel stated that he was "not concerned about the *Jensen v. State* case. . ." Record on appeal 23:101. In fact, the modifications to the jury instruction occurred at the suggestion of Dodson's attorney.[2]

---

[2] With regard to the first sentence of the instruction, the following colloquy occurred between the circuit court judge and Dodson's counsel:

> DEFENSE COUNSEL: And what I would suggest here, Judge, is between the dates alleged in the Information—
> THE COURT: [Asst. District Attorney], I guess what he's [defense counsel's] asking is the first sentence, if you find the offense committed by the defendant, it is not necessary that the State shall have proved that the offenses were committed between the dates—as between the precise dates.
> DEFENSE COUNSEL: Yes.

Record on appeal 23:96.

With regard to the second sentence of the instruction, the following colloquy occurred:

¶ 61. At the trial, the victim's testimony was uncertain regarding the specific dates upon which the alleged acts occurred, and Dodson did not present an alibi defense for any particular dates. In the circuit court judge's charge to the jury, the jurors were informed that they were to consider the instructions as a whole. *See* Record on appeal 23:127; *see also* Wis JI—Criminal 200. In all, the jury was given approximately 27 instructions, both on procedural and substantive aspects of the law applicable to this case. As part of its charge, the circuit court recited each of the four counts set forth in the Information, stating

THE COURT: All right. Just so that—So the State is conceding that the language on the second sentence as the evidence shows beyond a reasonable doubt the offenses were committed on a date during the time period alleged, that is sufficient.

DEFENSE COUNSEL: The only thing—I'm satisfied as the modification you don't have to use mine. If you simply add during the time period alleged in the Information.

THE COURT: That is for the first sentence.

DEFENSE COUNSEL: No. Down there at the bottom where we do have the same thing, don't we?

ASST. D.A.: Yes, we did.

DEFENSE COUNSEL: On the last sentence where he has stricken out near it says during.

THE COURT: The time period alleged.

DEFENSE COUNSEL: During the time period alleged in the Information?

THE COURT: Do you have an objection?

ASST. D.A.: No.

Record on appeal 23:100. Although I do not decide the issue, this colloquy may support an argument that Dodson has waived his right to object to the modified jury instruction, at least to the extent he argues that the modified instruction confused and misled the jury. *Cf. State v. Ambuehl*, 145 Wis. 2d 343, 361, 425 N.W.2d 649 (Ct. App. 1988) ("A defendant waives the right to claim error when the trial court instructs the jury in the manner defendant requested.").

that each offense allegedly occurred between February 29, 1992, and August 31, 1992. No member of the jury expressed confusion or requested further instruction after hearing the modified version of Wis JI—Criminal 255.

¶ 62. The circuit court submitted, in writing, several of the instructions for the jury to consider during deliberations. However, in accord with Wis. Stat. § 972.10, the instructions submitted in writing were only those relating to the burden of proof/presumption of innocence and applicable substantive law.[3] The modified version of Wis JI—Criminal 255 was not submitted to the jury in writing. *See* Record on appeal 29:1–12. Thus, there was no written instruction that could have arguably led to confusion. In addition, during deliberation, the jury did not ask for further clarification of the modified jury instruction as given orally by the circuit court judge.

¶ 63. The record does not reflect a reasonable possibility that the modified jury instruction, considered within the context of the trial as a whole, contributed to Dodson's convictions for first-degree sexual assault. Therefore, assuming the circuit court erred in giving the modified jury instruction, any error by the circuit court was harmless.

¶ 64. In summary, I conclude that the modified jury instruction must be viewed within the context of the trial as a whole. As such, this court should consider the testimony received at the circuit court trial, the recitation by the circuit court judge regarding the dates upon which the offenses allegedly occurred, the lack of

---

[3] Wisconsin Stat. § 972.10(5) states, in part:

The court shall provide the jury with one complete set of written instructions providing the burden of proof and the substantive law to be applied to the case to be decided.

any expression of confusion or request for further instruction by the jury, and the fact that the modified jury instruction was not submitted to the jury in writing. Based upon these facts, I conclude that there is no reasonable possibility, *see Dyess*, 124 Wis. 2d at 544, i.e., probability, *see Strickland*, 487 U.S. at 695, that the modified jury instruction confused or mislead the jury. Any error committed by the circuit court judge in giving the modified version of Wis JI—Criminal 255 was, therefore, harmless.

¶ 65. For these reasons, I concur.

¶ 66. I am authorized to state that Justice DONALD W. STEINMETZ and Justice JON P. WILCOX join this concurrence.